1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11
CARMEN LOPEZ,                               CASE NO. CV F 11-1795 LJO JLT
12
            Plaintiff,                      **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
13                                          **MOTION TO DISMISS**
      vs.                                   (Doc. 5.)
14
GMAC MORTGAGE, et al.,
15
            Defendants.
16
_____/
17
18                          **INTRODUCTION**
19         Defendants GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC ("ETS")
20   seek to dismiss as legally barred and time barred plaintiff Carmen Lopez' ("Ms. Lopez'") claims arising
21   out of the defaulted loan for and foreclosures on her Bakersfield property ("property"). Ms. Lopez filed
22   no papers to oppose timely GMAC and ETS' (collectively "defendants'") F.R.Civ.P. 12(b)(6) motion
23   to dismiss. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and
24   VACATES the December 15, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons
25   discussed below, this Court DISMISSES this action against defendants.
26                          **BACKGROUND**
27                 **Ms. Lopez' Loan And Property Foreclosure**
28         On October 3, 2007, Ms. Lopez financed the property's purchase with a $233,494 loan from

                                            1

GMAC.  A Deed of Trust ("DOT") was recorded on October 5, 2007 to secure the loan.[1]  The DOT names ETS as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, acting solely as nominee for lender GMAC.

On August 28, 2009, a Substitution of Trustee was recorded whereby ETS became DOT trustee.

In early 2010, Ms. Lopez experienced difficulties making her monthly loan payments and attempted to obtain a loan modification with GMAC.  GMAC rejected Ms. Lopez' partial payment and told her they could not accept such payments because she was under review for loan modification.

On May 3, 2010, ETS recorded a Notice of Default and Election to Sell under Deed of Trust which indicated that Ms. Lopez was $36,582.62 in arrears as of April 30, 2010.

In June 2010, plaintiff attempted again to work out a loan modification but never received the loan application as promised.  In August 2010, GMAC informed Ms. Lopez that she did not qualify for loan modification and that ETS proceeded toward property foreclosure.

In August 2010, Ms. Lopez again attempted to obtain loan modification and provided GMAC requested financial documents.  On September 21, 2010, MERS assigned its beneficial interest under the DOT to GMAC, and a corresponding Assignment of Deed of Trust was recorded on October 1, 2010.  In February 2011, GMAC declined Ms. Lopez for loan modification.

On May 12, 2011, a Notice of Trustee's Sale for the property was recorded.  On August 24, 2011, the property's foreclosure sale occurred, and GMAC became record title owner of the property.  A Trustee's Deed upon Sale was recorded on August 30, 2011.

### Ms. Lopez' Claims

On September 15, 2011, prior to removal to this Court, Ms. Lopez filed her Verified Complaint ("complaint") to allege California statutory and common law claims which will be addressed below.  The complaint alleges that "GMAC failed to act as reasonable lender by placing the Plaintiff in a risky unreasonable and unaffordable loan."  The complaint accuses GMAC of knowing that once the loan became unaffordable, Ms. Lopez "would be forced to either refinance or have a foreclosure" and of failing "to disclose the terms and risks of the Subject Loan in any meaningfully [sic] way."  The

---

[1]        Documents pertaining to Ms. Lopez' loan and property foreclosure were recorded with the Kern County Official Records.

2

1  complaint seeks damages of "loss money and property," a declaration that the foreclosure sale is void

2  and unenforceable, an injunction to evict Ms. Lopez, rescission of the promissory note and foreclosure

3  sale, and punitive damages.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

6  Defendants fault the complaint's failure to allege factual claims that "give rise to a valid claim"

7  given the complaint's speculative and conclusory allegations which are unclear as to "which defendants

8  are being named under each claim."

9  "When a federal court reviews the sufficiency of a complaint, before the reception of any

10 evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

11 a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

12 claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

13 *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

14 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

15 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

16 *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

17 of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

18 In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

19 the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

20 can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

21 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

22 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

23 *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

24 assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

25 *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

26 facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

27 alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

28 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

3

1   the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney,*

2   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

3          A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

4   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

5   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

6   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

7   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

8   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either

9   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

10  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

11  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

12         In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

13  explained:

14              . . . a complaint must contain sufficient factual matter, accepted as true, to "state
        a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the

15      plaintiff pleads factual content that allows the court to draw the reasonable inference that
        the defendant is liable for the misconduct alleged. . . . The plausibility standard is not

16      akin to a "probability requirement," but it asks for more than a sheer possibility that a
        defendant has acted unlawfully.  (Citations omitted.)

17

18         After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

19  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

20  must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

21  F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

22         The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

23              First, the tenet that a court must accept as true all of the allegations contained in
        a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a
        cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,

24      only a complaint that states a plausible claim for relief survives a motion to dismiss. . .

25      . Determining whether a complaint states a plausible claim for relief will . . . be a
        context-specific task that requires the reviewing court to draw on its judicial experience
        and common sense. . . . But where the well-pleaded facts do not permit the court to infer

26      more than the mere possibility of misconduct, the complaint has alleged – but it has not

27      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

28         In keeping with these principles a court considering a motion to dismiss can

4

choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

A "complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its

5

1   contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342

2   F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6)

3   motion by deliberately omitting reference to documents upon which their claims are based." *Parrino*

4   *v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]  A "court may disregard allegations in the complaint

5   if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v.*

6   *Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp*.,

7   815 F.2d 1265, 1267 (9th Cir.1987)).

8          With these standards in mind, this Court turns to defendants' challenges to Ms. Lopez' claims.

9                                          **Failure To Tender**

10                              ***Common Law And Equitable Claims***

11          Defendants raise Ms. Lopez' failure to tender amounts owed on her loan as a global defense to

12   the complaint's claims in that their "crux" "is a challenge to the foreclosure sale" which invokes

13   equitable principles.

14          "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

15   *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

16   Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

17   (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

18   *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.  "Nothing short of the full amount due the

19   creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

20   *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

21          A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

22   indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

23   *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

24   1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

25   1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

26

27          [2]          "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
       depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
       dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28   in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

. . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.*, 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt"). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

7

1   into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d

2   791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

3   is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

4   92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

5   law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial

6   foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820,

7   821, 134 Cal.Rptr.2d 162 (2003).

8       "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

9   Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

10   necessary on his part to complete the transaction, and must fairly make known his purpose without

11   ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

12   made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

13   1165, 246 Cal.Rptr. 421 (1988).  The debtor bears "responsibility to make an unambiguous tender of

14   the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

15   Cal.App.3d at 1165, 246 Cal.Rptr. 421.

16       Neither the complaint nor record references Ms. Lopez' tender of indebtedness or meaningful

17   ability to do so.  The complaint merely alleges that Ms. Lopez "would like to keep the property if the

18   Defendants . . . are willing to consider a reasonable loan modification."  An offer to negotiate a loan

19   modification is not a tender.  The record's silence on Ms. Lopez' tender of or ability to tender amounts

20   outstanding is construed as her concession of inability to do so.  Without Ms. Lopez' meaningful tender,

21   Ms. Lopez seeks empty remedies, not capable of being granted and the complaint's purported claims are

22   doomed.

### *Truth In Lending Act*

24       The complaint's first claim alleges that the "risks of the loan were not clearly communicated to

25   the Plaintiff by the Defendant GMAC, a clear violation" of  the Truth in Lending Act ("TILA"), 15

26   U.S.C. §§ 1601, et seq.  Under TILA, the "voiding of a security interest may be judicially conditioned

27   on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486

28   F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) addresses rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower

9

rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

---

[3]    The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

The complaint does not address conditions precedent to permit rescission under TILA.  The complaint is not a timely, valid rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821.  Without Ms. Lopez' meaningful tender, the complaint's claims, including those referencing TILA, are doomed.

### TILA Limitations Periods

Defendants fault the complaint's TILA claim as time barred.

### *Damages Limitations Period*

A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Ms. Lopez consummated her loan on October 3, 2007 and filed her complaint on September 15, 2011, nearly four years after her loan transaction, to render a TILA damages claim time barred.

### *Rescission Limitations Period*

To the extent that the complaint pursues a TILA rescission claim, it too is time barred.

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

---

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

*Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

The complaint alleges, and matters subject to judicial notice reflect, that Ms. Lopez' loan was consummated on October 3, 2007 to render a TILA rescission remedy expired prior to the September 15, 2010 filing of the complaint.  TILA rescission is time barred.

### *Equitable Tolling*

Apparently recognizing that TILA claims are time barred, Ms. Lopez in her complaint appears to invoke equitable tolling and alleges: "There may be a number of factors that affect the tolling of a statute of limitations.  In many cases, the discovery of the harms starts the statute running. . . Here, the discovery of the harm came well after the loan was originated."  Nonetheless, the complaint lacks allegations of facts to excuse Ms. Lopez' earlier discovery of TILA violations with due diligence and

1   to demonstrate concealment of material facts as to the loan agreements.

2       "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

3   information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178

4   (9th Cir. 2000). The Ninth Circuit Court has explained:

5           Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by
            the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was
6           excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the
            existence of a possible claim within the limitations period, then equitable tolling will
7           serve to extend the statute of limitations for filing until the plaintiff can gather what
            information he needs. . . . However, equitable tolling does not postpone the statute of
8           limitations until the existence of a claim is a virtual certainty.

9   *Santa Maria*, 202 F.3d at 1178 (citation omitted).

10      Courts are reluctant to invoke equitable tolling:

11          A statute of limitations is subject to the doctrine of equitable tolling; therefore,
            relief from strict construction of a statute of limitations is readily available in **extreme**
12          **cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling
            doctrine has been applied by the Supreme Court in certain circumstances, but it has been
13          applied sparingly; for example, the Supreme Court has allowed equitable tolling when
            the statute of limitations was not complied with because of defective pleadings, when a
14          claimant was tricked by an adversary into letting a deadline expire . . . Courts have been
            generally unforgiving, however, when a late filing is due to claimant's failure "to exercise
15          due diligence in preserving his legal rights." . . .

16  *Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

17      To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his

18  claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1)

19  the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

20  diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting

21  *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)). "[T]o

22  adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite

23  diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered

24  facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th

25  at 809, 27 Cal.Rptr.2d 661.

26      The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late

27  discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*,

28  66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff must show that it was not at fault

for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The complaint broadly references that "a number of factors" may "affect tolling of a statute of limitations." No allegation identifies specific withheld disclosures. The complaint lacks allegations that the lender defendants prevented Ms. Lopez to compare what documents she received to the TILA disclosure requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach). Nothing suggests that Ms. Lopez lacked information relevant to discovery of a TILA violation when her loan was consummated. The complaint offers nothing to demonstrate that despite Ms. Lopez' due diligence, she was unable to obtain information of a TILA violation. The complaint is silent as to her purported due diligence. The complaint is conclusory as to alleged TILA violations and support for tolling. The complaint's conclusory allegations are insufficient to invoke equitable tolling or delayed discovery and in turn to defeat the limitations defense. Ms. Lopez' TILA claim is time barred and subject to dismissal.

## Constructive Fraud

The complaint bases its (third) constructive fraud claim on GMAC's failure "to disclose how much and how soon the interest rate (and, therefore, the monthly payment) would increase after the teaser rate of Plaintiffs [sic] subprime ARM expired."

### GMAC As Lender

In *Salahutdin v. Valley of California, Inc.,* 24 Cal.App.4th 555, 562, 29 Cal.Rptr.2d 463 (1994), the California Court of Appeal explained constructive fraud:

> Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. . . . [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent. (Citation and internal punctuation omitted).

14

"Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind, and this must be alleged." *Younan v. Equifax Inc.*, 111 Cal.App.3d 498, 516-517,169 Cal.Rptr. 478 (1980). "It is essential to the operation of the doctrine of constructive fraud that there exist a fiduciary or special relationship." *Peterson Development Co. v. Torrey Pines Bank,* 233 Cal.App.3d 103, 116, 284 Cal.Rptr. 367 (1991). Constructive fraud elements are: (1) a fiduciary relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive; and (4) reliance and resulting injury (causation). *Younan*, 111 Cal.App.3d at 516-517, n. 14,169 Cal.Rptr. 478.

Defendants point to the absence of fiduciary relationship between Ms. Lopez and GMAC as original lender and servicer of Ms. Lopez' loan and DOT beneficiary.

A fiduciary relationship arises "between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937). A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26 Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)). To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted). "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465,

15

476-478, 261 Cal.Rptr. 735 (1989)).   A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

The complaint alleges no facts to support a fiduciary relationship between Ms. Lopez and GMAC.  The complaint's mere reference to a constructive fraud elements is insufficient to impose a fiduciary relationship on GMAC.  The complaint fails to allege existence of a fiduciary or confidential relationship with requisite specificity to warrant dismissal of the constructive fraud claim against GMAC.

### ETS As Trustee

Defendants contend that ETS as DOT trustee owes no fiduciary or similar duties to support a constructive fraud claim.

"Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930).

1   An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to

2   the execution of the trust." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).

3   A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey

4   upon default on the part of the debtor in the payment of his debt." *Lupertino*, 35 Cal.App.3d at 748, 111

5   Cal.Rptr. 112 (quoting *Bank of Italy, etc. Assn. v. Bentley,* 217 Cal. 644, 656, 20 P.2d 940 (1933)).  The

6   California Court of Appeal has explained a deed of trust trustee's limited authority:

7           The trustee under a deed of trust "is not a true trustee, and owes no fiduciary
        obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed
8       of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary
        to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the
9       deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668,
        677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to
10      impose duties on the trustee other than those imposed by statute or specified in the deed
        of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985)
11      39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in
        nonjudicial foreclosure proceedings have long been regarded as strictly limited and
12      defined by the contract of the parties and the statutes.... [¶] ... [T]here is no authority for
        the proposition that a trustee under a deed of trust owes any duties with respect to
13      exercise of the power of sale beyond those specified in the deed and the statutes." ( Id.
        at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

14

15  *Heritage Oaks Partners v. First American Title Ins. Co.,* 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510

16  (2007);

17  "The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a

18  common agent for the trustor and beneficiary. . . . The scope and nature of the trustee's duties are

19  exclusively defined by the deed of trust and the governing statutes. No other common law duties exist."

20  *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 335, 85 Cal.Rptr.3d 532 (2008) (citations omitted). "The

21  similarities between a trustee of an express trust and a trustee under a deed of trust end with the name.

22  . . . [T]he trustee under a deed of trust does not have a true trustee's interest in, and control over, the trust

23  property. Nor is it bound by the fiduciary duties that characterize a true trustee." *Monterey SP*

24  *Partnership v. WL Bangham*, 49 Cal.3d 454, 462-463, 261 Cal.Rtpr. 587 (1989).

25  A "trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due

26  diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Hatch v.*

27  *Collins,* 225 Cal.App.3d 1104, 1112, 275 Cal.Rptr. 476 (1990)(citation omitted).

28  The complaint lacks facts to support necessary elements for a constructive fraud claim against

1   ETS, whose role is limited to the DOT trustee.  The constructive fraud claim is subject to dismissal.

2   **Misrepresentation**

3   The complaint's (eighth) misrepresentation claim alleges the GMAC "made false representations

4   to Plaintiff in order to induce Plaintiff to obtain the Subject Loan because the Subject Loan was

5   presumably more profitable to Defendant GMAC."

6   Defendants attack the misrepresentation claim as lacking sufficient particularity to satisfy

7   F.R.Civ.P. 9(b).

8   *Fraud Elements*

9   The elements of a California fraud claim are: (1) misrepresentation (false representation,

10   concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

11   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

12   631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

13   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

14   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

15   "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

16   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

17   156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

18   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

19   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." 

20   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

21   will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

22   Cal.Rptr. 355 (1986).

23   *Particularity Pleading Standard*

24   F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[4]

25

26       [4]    F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
27   will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*
28   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
1995)(italics in original)).

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[5] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

---

[5] "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard.  The complaint lacks precise allegations as to what defendants, through specifically identified and authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct.  Defendants correctly challenge the complaint's "generalized, global pleading in the context of fraud claims."  The complaint relies on mere notions of false advise and promises regarding loan refinancing and modification.  Given the

20

1   multiple defendants and their differing roles, such allegations are insufficient to warrant dismissal of the

2   complaint's claims sounding in fraud.

3   **Breach Of Implied Covenant Of Good Faith And Fair Dealing**

4       The complaint's fourth claim alleges that "in violation of the contract and of the implied

5   covenant of good faith and fair dealing . . . GMAC unfairly interfered with Plaintiff [sic] rights to receive

6   promised benefits under the contracts by refusing to refinance and charging unconscionable monthly

7   payments."

8       Defendants challenge the complaint's lack of allegations to support a claim for breach of the

9   implied covenant of good faith and fair dealing in that no implied covenant precluded defendants to

10   commence non-judicial foreclosure.

11       "There is an implied covenant of good faith and fair dealing in every contract that neither party

12   will do anything which will injure the right of the other to receive the benefits of the agreement."

13   *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

14   (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). The

15   "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms

16   of the contract, and cannot be extended to create obligations not contemplated by the contract."

17   *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004)

18   (citation omitted).  The "scope of conduct prohibited by the covenant of good faith is circumscribed by

19   the purposes and express terms of the contract."  *Carma Developers (Cal.), Inc. v. Marathon*

20   *Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992).  "[T]he implied covenant

21   will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a

22   party from doing that which is expressly permitted by the agreement itself."  *Wolf v. Walt Disney*

23   *Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008).  "The covenant

24   'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the

25   specific terms of their agreement.'"  *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565

26   (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

27       The complaint fails to allege or identify a contract or contract provision to invoke an implied

28   covenant to impose on the defendants liability for alleged wrongs.  Defendants merely exercised their

DOT rights to pursue non-judicial foreclosure.  The complaint lacks an alleged breach to invoke the implied covenant of good faith and fair dealing.  Ms. Lopez is unable to resort to an implied covenant to manufacture defendants' obligations which do not exist.  The complaint's claim for breach of implied covenant of good faith and fair dealing is subject to dismissal.

### California Civil Code Section 2923.5

The complaint's (fifth) claim alleges that defendants failed to satisfy pre-foreclosure obligations under California Civil Code section 2923.5 ("section 2923.5") by failing to contact or attempt to contact Ms. Lopez "in a good faith effort to prevent foreclosure."

Section 2923.5(a)(1) prohibits a mortgagee, trustee, beneficiary or authorized agent to "file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

Defendants note that section 2923.5 offers no post-foreclosure relief.  The California Court of Appeal has explained:

> There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale. We would merely note that under the plain language of section 2923.5, read in conjunction with section 2924g, the only remedy provided is a postponement of the sale before it happens.

*Mabry v. Superior Court,* 185 Cal.App.4th 208, 235, 110 Cal.Rptr.3d 201 (2010); *see also Knapp v. Doherty*, 123 Cal.App.4th 76, 94, 20 Cal.Rptr.3d 1 (2004): ("slight procedural irregularity in the service of the Sale Notice did not cause any injury to Borrowers. They had notice of the original sale date; the trustee's sale did not go forward until almost one year after the date noticed. There was no prejudicial procedural irregularity.")

Defendants are correct that section 2923.5 supports no post-foreclosure claim or relief for Ms. Lopez to warrant dismissal of a claim premised on section 2923.5.

### Negligence

The complaint's (sixth) claim alleges "GMAC breached their [sic] duty of care to Plaintiff to act as reasonable lender."

### *Duty Of Care*

Defendants argue that the claim fails in the absence of their cognizable duty to support negligence. Defendants point out that a lender/borrower relationship fails to impose an actionable duty of care on defendants.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of

care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had"). "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

As to DOT trustees, the "scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist." *Kachlon*, 168 Cal.App.4th 316, 335, 85 Cal.Rptr.3d 532 (2008) (citations omitted).

The complaint insufficiently attempts to allege GMAC's cognizable a duty of care let alone its breach. Ms. Lopez lacks a negligence claim based on a lender/borrower relationship, particularly in the absence of a duty to forego foreclosure or to provide loan modification or refinancing. "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991). Defendants owed no duty of care to Ms. Lopez arising from her default, property foreclosure, and loan modification or refinancing attempts. The complaint lacks facts of special circumstances to impose duties on defendants in that the complaint depicts an arms-length transaction, nothing more. The complaint fails to substantiate a special lending relationship

1  or an actionable breach of duty to substantiate a negligence claim.  The negligence claim fails.

2  ### *Limitations Defense*

3  Moreover, the negligence claim is susceptible to the two-year limitations period of California

4  Code of Civil Procedure section 339(1).  The complaint alludes to GMAC's purported unreasonableness

5  two years prior to the complaint's September 15, 2011 filing.

6  ### California Statutory Unfair Lending Practices

7  The complaint's sixth claim alleges that GMAC violated "California's anti-predatory lending

8  statutes, Fin. Code 4970-4979.8, by steering, counseling and directing Plaintiffs [sic] to accept a loan

9  product that has a specified risk grade less favorable than another risk grade for which they [sic] could

10  have qualified."

11  An initial question is whether Ms. Lopez' loan is a "covered loan" under subsection (b) of

12  California Financial Code section 4970 ("section 4970").  Section 4970(b) provides:

13  "Covered loan" means a consumer loan in which the original principal balance
14  of the loan does not exceed the most current conforming loan limit for a single-family
   first mortgage loan established by the Federal National Mortgage Association in the case
   of a mortgage or deed of trust, and where one of the following conditions are met:
15

16  (1) For a mortgage or deed of trust, the annual percentage rate at consummation
   of the transaction will exceed by more than eight percentage points the yield on Treasury
   securities having comparable periods of maturity on the 15th day of the month
17  immediately preceding the month in which the application for the extension of credit is
   received by the creditor.
18

19  (2) The total points and fees payable by the consumer at or before closing for a
   mortgage or deed of trust will exceed 6 percent of the total loan amount.

20  The complaint fails to allege facts that Ms. Lopez' loan meets section 4970(b) conditions.  *See*

21  *Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047, 1054 (E.D. Cal. 2009) (dismissing a section 4970 claim

22  for failure to allege "covered loan" conditions).  In absence of necessary facts to establish a covered loan,

23  the complaint's sixth claim fails.  *See Fortaleza v. PNC Financial Services Group, Inc.*, 642 F.Supp.2d

24  1012, 1020 (N.D. Cal. 2009) (dismissing a claim under California Financial Code, §§ 4973, et seq., in

25  that plaintiff "failed to identify either the specific statutory provision pursuant to which plaintiff brings

26  suit, or the specific conduct undertaken by either [defendant] in alleged violation of an applicable

27  statutory provision").

28  Furthermore, the complaint's sixth claim is untimely in that California Code of Civil Procedure

section 340 provides a one-year limitations period for statutes such as California Financial Code sections 4970-4979.8. *See DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119, 1128-1129 (N.D. Cal. 2010). Ms. Lopez' claims arise out of her loan origination and accrued at the loan's October 3, 2007 closing to render the September 15, 2011 complaint filing untimely for claims under California Financial Code sections 4970-4979.8.

### Unfair Business Practices

The complaint's second claim alleges that GMAC engaged in business practices to violate "Business and Professions Code section 17200, et. Seq. [sic] by making untrue and misleading statement [sic] and by causing untrue or misleading statements to be made by the mortgage broker, with the intent to induce Plaintiff to enter the Subject Loan."

Defendants fault the complaint's failure to allege a predicate legal violation to support a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th

26

377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548. The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint fails to establish that defendants engaged in unlawful, unfair or fraudulent business practices under the UCL. In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on alleged irregularities in the loan transaction or foreclosure proceedings. The complaint lacks viable statutory or common law claims. The complaint lacks reasonable particularity of facts to support a UCL claim. Reliance on other invalid claims alleged in the complaint fails to

1   support a viable UCL claim.  The UCL claim lacks particularity of fraudulent circumstances, such as a

2   misrepresentation, for a UCL claim, especially given failure of fraud-sounding claims, as discussed

3   above.  The complaint lacks facts to describe how consumers were deceived.  The complaint lacks facts

4   to hint at a wrong subject to the UCL to warrant the UCL claim's  dismissal.

5                            **CONCLUSION AND ORDER**

6          For the reasons discussed above, this Court:

7          1.      DISMISSES with prejudice this action against defendants; and

8          2.      DIRECTS the clerk to enter judgment in favor of defendants GMAC Mortgage, LLC and

9                  Executive Trustee Services, LLC and against plaintiff Carmen Lopez and to close this

10                 action.

11         IT IS SO ORDERED.

12   **Dated:    December 5, 2011**            _____/s/ Lawrence J. O'Neill_____
                                               UNITED STATES DISTRICT JUDGE

28